Hand-Delivered

FILED
CHARLOTTE, NC

# UNITED STATES DISTRICT COURT
for the
WESTERN District of NORTH CAROLINA

NOV 2 4 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

CHARLOTTE Division

CHARLEEN A. V. BURKE

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

MECKLENBURG AREA CATHOLIC SCHOOL
"see attached"

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Case No. 3:20 cv 657-FDW
(to be filled in by the Clerk's Office)

Jury Trial: (check one) ☒ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | CHARLEEN A. V. BURKE |
| Street Address | 1140 GERALDINE POWE DRIVE |
| City and County | CHARLOTTE, MECKLENBURG |
| State and Zip Code | NORTH CAROLINA 28206 |
| Telephone Number | 912-660-0635 |
| E-mail Address | thompsonaag@hotmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | MECKLENBURG AREA CATHOLIC SCHOOL |
| Job or Title *(if known)* | ORGANIZATION |
| Street Address | 1123    SOUTH  CHURCH STREET |
| City and County | CHARLOTTE, MECKLENBURG |
| State and Zip Code | NORTH CAROLINA, 28209 |
| Telephone Number | 1-704-370-3338 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | KATHY MCKINNEY |
| Job or Title *(if known)* | PRINCIPAL ; ST. ANN CATHOLIC SCHOOL |
| Street Address | 600 HILLSIDE AVENUE |
| City and County | CHARLOTTE; MECKLENBURG |
| State and Zip Code | NORTH CAROLINA,28209 |
| Telephone Number | 704-525-4938 |
| E-mail Address *(if known)* | kbmckinney@stannschool.net |

Defendant No. 3

| | |
|---|---|
| Name | DEBBIE MIXER |
| Job or Title *(if known)* | School Superintendent interim |
| Street Address | 1123 South Church Street |
| City and County | Charlotte, Mecklenburg |
| State and Zip Code | North Carolina 28209 |
| Telephone Number | 1-704-370-3338 |
| E-mail Address *(if known)* | DLMixer@charlottediocese.org |

Defendant No. 4

| | |
|---|---|
| Name | Terri Wilhelm |
| Job or Title *(if known)* | Human Resources Director |
| Street Address | 1123 South Church Street |
| City and County | Charlotte, Mecklenburg |
| State and Zip Code | North Carolina, 28209 |
| Telephone Number | 1-704-370-3338 |

E-mail Address *(if known)*    twilhelm@charlottedioceses.org

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question         ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title VII Civil Right Act
Terminiated because of being Black
ADEA Age discrimination in Emplyment Act

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual
       The plaintiff, *(name)* Charleen A. V. Burke, is a citizen of the State of *(name)* North Carolina.

    b. If the plaintiff is a corporation
       The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
       and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

Additional page

If the basis for jurisdiction is diversity of citizenship

2.

Defendants name

Debbie Mixer

Resident North Carolina

Terri Wilhelm

Resident of North Carolina

The defendant, *(name)* Kathy McKinney , is a citizen of
the State of *(name)* North Carolina . Or is a citizen of
*(foreign nation)* _____ .

b. If the defendant is a corporation

The defendant, *(name)* Mecklenburg Area Catholic School , is incorporated under
the laws of the State of *(name)* North Carolina , and has its
principal place of business in the State of *(name)* North Carolina .
Or is incorporated under the laws of *(foreign nation)* _____ ,
and has its principal place of business in *(name)* Mecklenburg Area Catholic School .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Unlawful discrimination, failure to prevent discrimination and wrongful termination,
Loss wages because of wrongful dismissal
Equal Pay Act not paid according to years of experience and education

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

MACS, and other defendents choose to solve racial conflict by firing the only Black person Charleen A. V. Burke's employment rather than trying to create a more inclusive and less hostile work environment.The decision to dismiss Charleen A. V. Burke was an employment decision based on race.
Support:
1. My awareness of an unknown flu viruse made me ask Kathy McKinney for a separate restroom for the female teachers. The restroom about 5x8 was used as the restroom for about 10 or more male construction workers in addition to some other teachers and me, Charleen A. V. Burke. Kathy McKinney met this suggestion with contention and refused. Additional pages

## III. Statement of Claim

2. Kathy McKinney called me in her office under the pretense of inquiring about a student. Kathy McKinney accused me of talking about another teacher. Kathy McKinney made statements that alluded to me, Charleen A. V. Burke is an outsider and don't belong. During this conversation it was apparent that Kathy McKinney valued a white teachers accusation over a Black person's defense. Kathy McKinney said all the teachers get alone so well together and never talk about each other. I reminded Kathy McKinney that at a faculty meeting 30 minutes of the meeting was devoted to talking about another lady that was over 55 years of age. The discussion was vicious and unprofessional. Comments were made that "she should retire". Kathy McKinney made no attempts to stop the bashing of this employee.

3. CROWN Act

Kathy McKinney and other at the school frequently stared at my hair without regard to being offensive. Kathy McKinney and other did not care if I was aware of their undue staring at my hair.

ADEA

4. I just arrived on the playground to relieve Kathy McKinney from duty. Kathy McKinney demanded me to look at something in the building. Kathy McKinney insisted that I use the emergency stairs on the outside of the building and climb about 3-4 flights of stairs; *From the below ground level up to 2nd floor of the building* while she watched to determine whether my age impaired my physical abilities

5a. Hostile environment. Treated as a second-class citizen. During conversation among Kathy McKinney and other white staff I had to wait till they were finish their conversation before I could speak. They just acted like I was invisible. The interim superintendent, Kathy McKinney and another teacher failed to introduce me as I passed them at least 3 times in the hallway, did not speak.

5b. Set me up for failure

I could see in *(cannot recall her name)* the glow of excitement and mischievousness.

During mass I was insistently instructed by 2 teachers to provide intervention to a student that was under a pew in the church. The student in question needed more invention than I could provide. The school has a behavior interventionist that was not called. I told the teachers to get the principal. The behavior intervention teacher permitted the student to remain under the pew. Kathy McKinney in latter conversation revealed that she, Kathy McKinney was aware of the situation. I suspect Kathy McKinney spearheaded this fiasco to support her racist belief that I, Charleen Burke, could not possibly be knowledgeable and lacked counseling skills.

6. Preferential treatment to white teachers:

Kathy McKinney lied and said I did not turn in an application; emails attachment proves differently.

Kathy McKinney commanded me to provide documentation that I am a practicing catholic; Kathy McKinney demanded all my college transcripts and test scores within 24hours. Even though I am license though the state of North Carolina and all confidential transcripts, test scores, are available to the superintendent of any school district in North Carolina. I was very suspicious because Kathy McKinney does not have the degrees of certification and because of her inclination for deceit I was not sure of her motive. I overheard a teacher speaking to a person in human resources, telling them that she received her master's degree and did not receive her pay. I asked the white teacher did she submit her transcript to Kathy McKinney. The white teacher responds no that she did not submit her transcript to MACS or Kathy McKinney, she just let them know that she completed her master's degree.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Compensatory: Equal Pay Act should have received future pay lost for 10
EPA should have received14000+680000=694000       694,000
Emotion distress 100,000
Punitive: MACS and other defendants used actions to cover up discrimination; failed to act in "good faith" to enforce policies and practices to eliminate discrimination.
    a. Restore job
    b.7,000,000

Exemplary: MACS and other defendants acted with malice, fraud, and oppression
    Blatant discrimination race, age and failure to treat with dignity
    Training
      a. EEOC of employees
      b. Personnel Human     resource ADM team
      c. ethics and Integrity
        5,000,000
Total=13.794 million:13,794,000 request damages

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     11/24/2020

Signature of Plaintiff     *[signature]*
Printed Name of Plaintiff     CHARLEEN A. V. BURKE

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Street Address _____
State and Zip Code _____
Telephone Number _____
E-mail Address _____



# U.S. Equal Employment Opportunity Commission
## Charlotte District Office
129 W. Trade Street
Suite 400
Charlotte, NC 28202

## **NOTICE OF CHARGE OF DISCRIMINATION**

(This Notice replaces EEOC FORM 131)

## **DIGITAL CHARGE SYSTEM**

August 23, 2020

**To:** Mr. Joseph Dodge
Diocese Attorney
Catholic Diocese of Charlotte
jfdodge@charlottediocese.org

> 1 LINE REDACTED FROM ENTIRE PAGE
> Disclosure would invade personal privacy.

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Charleen A V. Burke, under: Title VII of the Civil Rights Act (Title VII) and The Age Discrimination in Employment Act (ADEA). The circumstances of the alleged discrimination are based on Retaliation, Race, and Age, and involve issues of Harassment, Discharge, and Exclusion that are alleged to have occurred on or about Jan 01, 2020 through Feb 24, 2020 and may be continuing.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please follow these instructions to view the charge within ten (10) days of receiving this Notice:

1. Access EEOC's secure online system: **https://nxg.eeoc.gov/rsp/login.jsf**
2. Enter this EEOC Charge No.: **430-2020-02407**
3. Enter this temporary password: (b)(6);(b)(7)(C)

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses, and identify your EEOC point of contact for this charge.

If you are unable to log into the EEOC Respondent Portal or have any questions regarding the Digital Charge System, you can send an email to chargov@eeoc.gov.

### Preservation of Records Requirement

EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see http://eeoc.gov/employers/recordkeeping.cfm.

### Non-Retaliation Requirements

The laws enforced by the EEOC prohibit retaliation against any individual because s/he has filed a charge, testified, assisted or participated in an investigation, proceeding or hearing under these laws. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. For more information, see http://www.eeoc.gov/laws/types/facts-retal.cfm.

### Legal Representation

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please provide the attorney's contact information when you log in to the online system.

Please retain this notice for your records.

Dear Small Business Manager:

The Equal Employment Opportunity Commission (EEOC) is the federal agency with primary responsibility for enforcing our nation's equal employment opportunity (EEO) laws. The laws we enforce prohibit job discrimination based on race, color, religion, sex (including on the basis of pregnancy, gender identity, or sexual orientation), national origin, age, disability, retaliation and genetic information.

The attached Fact Sheet provides an overview of the EEOC's procedures from the time a charge of employment discrimination is filed to the point that it is resolved.

We encourage you to visit our online Small Business Resource Center, which provides a wealth of information designed to help small businesses. We offer tips and short videos on key employment topics including what to do when you receive a charge of discrimination.

In most cases, as our first step in processing a charge, we offer mediation as a neutral, voluntary and confidential way to achieve a mutually satisfactory resolution for all parties. Seventy-five percent of charges that are mediated are successfully resolved. In an independent study, 96% of employers who tried the EEOC's mediation program said they would use it again if the need arose.

In addition to the EEOC representative identified on the Notice of Charge of Discrimination, each of our district offices has a Small Business Liaison to provide technical assistance and help employers resolve questions about the laws we enforce, our mediation program, and the charge process. You can find the names and contact information of our Small Business Liaisons on our web site.

We encourage you to contact the Small Business Liaison in your area to answer any questions you may have and assure you that any inquiry or request for information will not adversely affect the investigation of the charge that has been filed.

Yours truly,

U.S. Equal Employment Opportunity Commission

## *Find the Answers at EEOC's Small Business Resource Center*

The EEOC's Small Business Resource Center (www.eeoc.gov/employers/smallbusiness) is filled with useful information for small business and can connect you with EEOC staff in your area who can help you.

- *Have a question? Need training for your staff or one-on-one assistance?*

    To request information about the EEOC, training on federal employment discrimination laws or an explanation of the charge process, contact your local EEOC Small Business Liaison. We are here to help.

- *Want quick information online?*

    The EEOC's Small Business Liaisons have created videos with the small business owner in mind and the simple straightforward information that you need most. For example, you may need to know what questions you shouldn't ask in a job interview, and other tips for the hiring process.

    Also see our Frequently Asked Questions.

- *Need an employment policy or practical tips on preventing job discrimination?*

    See 10 Quick Tips for Small Business.

- *Need to know more about EEOC's charge process?*

    We have a video on Responding to a Charge of Discrimination.

- *What is mediation?*

    The EEOC's mediation program offers a free, voluntary, confidential and informal resolution process for many charges of discrimination. Mediations are conducted by a neutral mediator. If mediation is successful, there is no investigation.

- *Want information about a specific topic?*

    Our Resources page explains the types of employment discrimination covered by the EEOC's laws as well as the legal requirements you need to know.

We can also direct you to other federal agencies for information on issues such as minimum wage and overtime pay or family and medical leave. The Resources page gives a link to small business assistance from the SBA and provides information on the Small Business Regulatory Enforcement Fairness Act (SBREFA), which allows small businesses to comment on federal agency enforcement actions to the SBA Ombudsman.

You can order our Publications online free of charge or print them for use. You can also order the EEOC's poster, "EEO Is The Law," here.

**For more information and assistance call the EEOC toll-free at 1-800-669-4000 or use our sign language access line at 1-844-234-5122 (ASL Video Phone)**

# Charleen Burke
# Intake Interview
# 07-29-2020

## Catholic Diocese of Charlotte Advancement Corporation— Diocese of Charlotte Catholic Schools

CP was a guidance counselor in a Catholic school in a elementary school. Hired in Jan 2020. Hired by Kathy McKinney, Principal of St. Anne Catholic School.

CP was terminated on Feb 24, 2020 but Cp had stopped working earlier. KM called Cp into the office to terminate her. Also present another teacher, name not recalled. Reason given: She said she did not have to give a reason.

CP says she was always exceptional in her job. Came early, interacted with students, did extra things (bulletin board), always finished assignments ahead of time. CP was stunned about termination.

CP called superintendent and sent letters to the bishop and to school board and others asking why she was terminated. CP also wrote to Vicar of Education. All contacts were asking why she was fired and to investigate and rehire CP. Vicar finally called CP. Vicar said that termination will stand. CP explained her position and she didn't understand why.

CP said it was an all white faculty. During interview, everyone said they were impressed with CP's credentials. A teacher CP cannot remember who this was, came in a looked at CP's hair. The teacher did not try to hide that she was looking at CP's hair. Teacher had a look on her face that said she was unhappy. After first interview, Cp got a letter that said job denied.

CP has 36 years of experience. R offered a pay for 6 years of exp. only. Diocese told CP that they would give credit for 10 years of experience. R finally only gave her pay for 2 years of pay for her two years of exp. In a Catholic School. CP accepted b/c she liked her profession.

CP says she is Catholic. CP says that she was expected to be a "nigger woman." Catholic schools tend to hire white women with husbands are lawyers and doctors. Jobs reserved for white woman or black people with exceptional credentials.

KM asked Qs about CP being Catholic and wanted to get a letter from CP's parish where you are part of congregation.

Technology Teacher said in a conversation with CP: The bishop says that we must hire a Catholic over a qualified non-Catholic. Catholics get preference. Q: Why are you telling me this? A: I'm giving a foundation to show KM fired CP for a reason to not hire CP or to get rid of CP. CP brought the letter.

CP thinks that KM wanted CP to be subservient. Maybe just dislike. KM didn't like the person that I am. KM "hired me out of despair." KM didn't like CP's hair because CP kept looking at CP's hair. KM told a student in the hall way in CP's presence: "What happened to your hair?" This student was name unknown. CP does not know this student's race. CP says he has curly hair. He may be Hispanic or black. Are there black students in the school? Yes. Maybe about 15-20. 250-300 students in the entire school.

CP says her starting pay was less than it as supposed to be. Her salary should have been hired.

Ignoring CP and looking at her hair. "That's unacceptable." CP overheard a conversation or the end of a conversation. KM and her secretary and an unknown 3rd person were talking. CP wears cologne. They said in amazement that CP wore perfume. CP did not like that they were evaluating her. CP says that this conv. shows that CP was a "nigger."

If a conv. was going on, CP has to wait till they are done with their "trivial petty conversation" until CP could talk.

KM, a substitute librarian, and Ms. Mixer were talking. CP passed by and they did not acknowledge her.

So, I went back to my "small cubby hole office in back of library" and CP came back out and they still did not acknowledge CP.

Asst. Superintendent who signed CP's contract walked passed CP's "cubby hole office" CP introduced herself to Asst Super. Asst super. did nothing but talk and talk about how she was friend with Kathy McKinney. KM then tried to rush asst super away from CP and down the stairs.

"My hair is just as good as their hair. They wanted me to see they did not find my hair acceptable." These are micro-aggressions.

## Age—CP is 66. CP says she is very youthful looking.

Receptionist and secretary thought CP made a mistake on her application. Sec asks CP to confirm her date of birth (b/c CP looks so young.) CP saw her job application laying in KM's office and saw her application right out on a table. CP made a comment about KM's failure to keep her info (incl age) confidential.

KM and CP outside. CP was there to relieve KM from outdoor duty. KM insisted that CP go up two flights of stairs outside. CP says that KM thought that CP though KM not capable of going up two flights of stairs b/c of age. KM watched CP the whole entire way up the stairs.

"I found that kind of unusual...."

Prior conversations with KM about something KM unhappy about? No.
Comment to you about race specifically? Tech. teacher (Lisa LNU) said she look at obituaries and sees people who passed away with her last name and she told her husband, Your family must have owned slaves. CP says she did not take offense but responded: They were very nice people so others took their last name.

Only other statement was about Hispanic people. Lisa said in re. her delay in submitting grades: Hispanic people are always late turning in their grades.
Lisa is close friends with KM and so I assume they share some common values.

No comments about age. No direct comments.

I explained to CP the presumption that CP hired being black and fired 4-6 weeks later by the same person who hired her -- presumption that termination not based on race. Also explained that most incidents CP complains of are by a teacher, Lisa, and cannot be attributed to KM, who fired her. Also, some things CP complains of are unfair but there is no evidence that those incidents occurred b/c of race—e.g., lower salary that she expected and having to provide a letter from her parish.

CP listened carefully as I explained and did not interrupt. She did murmur some accepting words like "mmm-huh" and "Ah-huh." She did not object to this reasoning.

I told her she could file a charge but EEOC would not investigate. She asked me again at end of conversation whether EEOC would investigate if she filed a charge and I confirmed that EEOC would not investigate. Call ended cordially with CP just saying, Thank you.



# Office of the General Counsel for the Roman Catholic Diocese of Charlotte

Joe Dodge - General Counsel

March 6, 2020

NC Division of Employment Security
Remote Services Center
Post Office Box 27967
Raleigh, NC 27967

Re: Charleen A. Burke
 Claimant SSN: 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

Dear Sir/Madam:

I'm responding to the attached Audit and request for information for Charleen A. Burke; Claimant SSN: 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.

I am the General Counsel for the Roman Catholic Diocese of Charlotte and, as such, I represent Mecklenburg Area Catholic Schools (MACS).

Employees of the Diocese are not covered by unemployment compensation and as a result the Roman Catholic Diocese of Charlotte and MACS are exempt from coverage and responsibilities under the Employment Security Law of North Carolina. This determination was made by the North Carolina Court of Appeals in the case entitled, Begley v. Employment Security Commission, 274 SE2d 370 (1981).

I've attached the reference to this limitation as contained in our Personnel Policies Handbook, a copy of which is available to all employees, including Ms. Charleen A. Burke.

I will proceed under the understanding that no further action is necessary regarding this matter, on the part of my clients, unless I receive additional instruction from you.

Sincerely,

Joe Dodge

Enc.

 

# North Carolina Department of Commerce
# Division of Employment Security
### Unemployment Insurance

## NOTICE OF UNEMPLOYMENT CLAIM

Mail Date: March 2, 2020
EAN: 0006467

MECKLENBURG AREA CATHOLIC SCHOOL
1123 S CHURCH ST CHARLOTTE
CHARLOTTE, NC 28203

This is to notify you that the individual named below has filed a claim for benefits. You are the claimant's LAST employer. If you receive and respond to requests for separation information online, please log in at des.nc.gov and provide accurate information. Otherwise, a Request for Separation Information (form NC CLM 500AB) has been mailed to you. Please carefully follow the instructions on Form NC CLM 500AB regarding how to provide a timely response. The Division of Employment Security needs your timely response to ensure that any benefits due to the claimant are paid accurately.

CLAIMANT NAME: CHARLEEN A BURKE          SSN: 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

BENEFIT YEAR BEGAN: February 23, 2020

Help us prevent UI Fraud. Report suspected UI Fraud online at des.nc.gov
Post Office Box 26903 Raleigh, North Carolina 27611-5903

NC CLM 551LE_92.0.0

Case 3:20-cv-00657-FDW-DCK   Document 1   Filed 11/24/20   Page 18 of 19

|  |  |
|---|---|
| Salary Level | **M** |
| Experience Level | 8 |
| Subject or Grade: | Guidance Counselor |
| School: | St. Ann |

**DIOCESE OF CHARLOTTE-MACS**
**TEACHER EMPLOYMENT CONTRACT**

THIS AGREEMENT, made and entered into this <u>6th</u> day of <u>January, 2020</u>, by and between **MACS**, hereinafter referred to as "School", and **Charleen Burke**, hereinafter referred to as "Teacher."

**WITNESSETH**:

WHEREAS, MACS and School wishes to hire Teacher to teach for the academic year of 2019-2020; and
WHEREAS, Teacher wishes to teach in the school system for said academic year;
NOW, THEREFORE, by and with the consent of both parties, the parties hereto covenant and agree as follows:

1. **TERM**: The term of this Contract is for the Academic Year 2019-2020.

2. **SALARY**: In consideration of Teacher performing the services hereinafter described, MACS shall pay to Teacher the total sum of **$23,663.29**,

3. **DUTIES**: Teacher agrees to perform any and all duties for the position for which he/she is hired and all other duties as directed by School including, but not limited to, to participate and cooperate with any investigations regarding his/her performance and/or conduct as a teacher in a Diocesan School, to teach and supervise the grade, grades or courses assigned by the principal of the School and to perform the other duties or responsibilities involved in his/her assignment to term of this Contract; to attend and participate in all school faculty meetings, and such other professional meetings as called by the Superintendent of Catholic Schools or the principal; to comply with the requirements of the Diocese regarding the educational preparation of teaching; and to participate in associations and meetings as directed by the Superintendent or principal for the promotion of close collaboration between parents and teachers and to otherwise assist the teacher in the performance of his/her duties. Teacher, regardless of membership in the Catholic Church, must be consistent at all times, in example and expression, with the tenets and morals of the Catholic Faith.

4. **TERMINATION DURING TERM OF CONTRACT**: This Agreement may be terminated as follows:
   a. By mutual consent of both parties;
   b. By School, upon thirty (30) days written notice to Teacher, in the event of declining enrollment in the school.
   c. By School, upon written notice to Teacher, for cause including, but not limited to, failure to cooperate with any investigation regarding his/her performance and/or conduct as a teacher, inefficiency, neglect of duty, unprofessional action/conduct, incompetency, insubordination, moral misconduct, current abuse of alcohol, current use of illegal drugs, current misuse of prescription drugs, conviction of a felony or a crime involving moral turpitude, failure to maintain teaching certificate in current status, or breach of this Agreement.

5. **TERMINATION BY TEACHER**: In the event this Agreement is terminated unilaterally by Teacher, Teacher shall provide School at least two weeks' notice of his/her intention to terminate.

6. **SPECIAL TERMS AND CONDITIONS**: Teacher shall further comply with the following special terms and conditions:
   a. Full Time (100%)
   b. M8 ($44,046)/188 work days = $234.29 * 101 remaining work days = $23,663.29
   c.

7. **DIOCESAN RULES AND REGULATION**: This Agreement is subject to the Personnel Policies Handbook of the Diocese of Charlotte and the Policies and Regulations as promulgated by the Diocesan Board of Education, MACS Board of Education and the Superintendent of Catholic Schools for the Diocese of Charlotte.

8. Contracts are to be returned and signed within fourteen (14) working days upon receipt of Contract. This Contract is void beyond the deadline unless an extension of time has been specifically agreed to, in writing, by the teacher and superintendent.

9. **EXCLUSIVE AGREEMENT**: This Contract contains complete agreement concerning the employment arrangement between the parties. Any amendment, deletion or addition to this Contract must be in writing and signed by all parties.

EMPLOYER
_[signature]_
Interim Superintendent of Schools

<u>12/13/2019</u>
Date Offered

<u>19 Dec, 2019</u>
Date Accepted

_[signature: Charleen W. Burke]_
Teacher Signature

**SELECT ONE**: SALARY IS REQUESTED TO BE PAID
☑ OVER THE SCHOOL YEAR (22 PAYMENTS)   OR   ☐ OVER THE SCHOOL YEAR AND FOLLOWING SUMMER (26 PAYMENTS)

(Subject to appropriate deductions for State, Federal and Local taxes, FICA and any other deductions authorized by Teacher).

1 copy to Teacher    1 copy for School File    1 copy for Diocesan Office    1 copy for Payroll

Revised 03/31/2015